UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANTOINETTE AMSTEIN,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>  Defendant. | Case No.  5:10-cv-05664 HRL<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re:  Dkt. 18, 19] |

Plaintiff Antoinette Amstein appeals a final decision by the Commissioner of Social Security denying her application for supplemental security income (SSI) under Title XVI of the Social Security Act. The parties have filed cross-motions for summary judgment, and the matter was submitted without oral argument. Upon consideration of the moving and responding papers, and for the reasons set forth below, plaintiff's motion is denied and defendant's cross-motion is granted.[1]

## BACKGROUND

Amstein was born in 1965 and was 44 years old at the time the Administrative Law Judge (ALJ) rendered the decision under consideration here. She completed the 10th grade and previously worked as a house cleaner, prep cook, merchandise stock person, and cook. (AR 171-

---

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

1    175).

2    Plaintiff previously applied for SSI in 2004, alleging an inability to work due to back pain,
3    arthritis, and swelling of her lower extremities.  That claim was denied initially, on reconsideration
4    and, following a hearing, in an October 24, 2005 ALJ decision finding that plaintiff could perform
5    her past relevant work as a housecleaner, inventory clerk, and waitress.  (AR 86-90).

6    Plaintiff subsequently applied for SSI in 2007, alleging disability due to neck and back
7    pain, foot pain, depression, obesity, and fibromyalgia, with an amended onset date of December
8    10, 2007.  The application was denied initially and on reconsideration, and plaintiff requested a
9    hearing before an ALJ.

10   Following a hearing, the ALJ issued a decision concluding that Amstein is not disabled
11   under the Social Security Act.  He found that new and material evidence indicates that her health
12   had worsened since the date of the earlier ALJ decision and that, since the filing of her last claim,
13   she had been diagnosed with fibromyalgia, depression, mildly bulging discs with strain of the
14   cervical and lumbar spines, and plantar fasciitis.  (AR 20, 22).  Additionally, he found that
15   plaintiff had not engaged in substantial gainful activity since February 5, 2007 and that she has the
16   following "severe" impairments:   minimal cervical and lumbar bulging discs involving
17   cervicothoracic lumbar strain; right foot plantar faciitis; fibromyalgia; and depression.  (AR 22).
18   He also found that Amstein has a medically determinable impairment of obesity, but that it is not
19   severe and that she does not have an impairment listed in or medically equal to one listed in 20
20   C.F.R., Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.925 and § 416.926).  (AR 26-27).  The
21   ALJ concluded that, while plaintiff was unable to perform any past relevant work, she has the
22   residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b),
23   with certain modifications as follows:

> She is able to lift and carry a maximum of 20 lbs occasionally, and a [sic] 10 lbs frequently; she is able to stand and walk for 6 hours, sit for 6 hours out of an 8 hour day; with a sit stand option, occasionally climb stairs and ramps but never ladders and scaffolds, frequently balance, and occasionally stoop, crouch, kneel and crawl; unlimited in manipulative functions of reaching, handling, and fingering, and feeling; unlimited communicative functions of hearing, seeing and speaking; avoid all environmental exposure to cold, heat, wetness,

1
2
3
4

> humidity, noise, vibration, fumes, odors, dust and gases, heights and machinery; she is able to understand, carry out, and remember short and simply instructions and make simple judgments on work-related decisions and respond to appropriate work changes and pressures in a usual work setting; and, is slightly limited in understanding, remembering, and carrying out detailed instructions, in interacting appropriate[ly] with the public, supervisors, and co-workers.

(AR 28-29). Finally, the ALJ found that there are jobs that exist in significant numbers in the national economy that Amstein can perform, including clerk cashier, parking lot attendant, and security/lobby reception-type security. (AR 32).

The Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. Plaintiff now seeks judicial review of that decision.

## LEGAL STANDARD

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance---it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Drouin, 966 F.2d at 1258.

### B. Standard for Determining Disability

The Social Security Act (Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

3

for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Additionally, the impairment must be so severe that a claimant is unable to do previous work, and cannot "engage in any other kind of substantial gainful work which exists in the national economy," considering the claimant's age, education, and work experience. Id., § 423(d)(2)(A).

In determining whether a claimant has a disability within the meaning of the Act, an ALJ follows a five-step analysis, 20 C.F.R. § 416.920:

1. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the analysis proceeds to step 2.
2. At step two, the ALJ must assess whether the claimant suffers from a severe "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." Id. at § 416.920(c). If not, the claimant is not disabled. If so, the evaluation proceeds to step three.
3. At step three, the ALJ determines whether the claimant's impairments or combination of impairments meets or medically equals the requirements of the Listing of Impairments. 20 C.F.R. § 416.920(d). If so, the claimant is disabled. If not, the analysis proceeds to step four.
4. At step four, the ALJ determines whether the claimant has the RFC to perform past work despite her limitations. 20 C.F.R. § 416.920(e), (f). If the claimant can still perform past work, then she is not disabled. If not, then the evaluation proceeds to step five.
5. At the fifth and final step, the ALJ must determine whether the claimant can perform other substantial gainful work available in the economy, considering the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(g). If so, the claimant is not disabled.

The claimant bears the burden of proof at steps one through four; the Commissioner has the burden at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001).

# DISCUSSION

Amstein contends that the ALJ erred by failing to (1) properly evaluate her obesity consistent with Social Security Ruling (SSR) 02-1p; and (2) provide clear and convincing reasons, supported by substantial evidence, for partially discounting her subjective complaints.

## A. ALJ's Obesity Evaluation

Plaintiff argues that, contrary to the requirements of SSR 02-1p, the ALJ failed to evaluate the effects of obesity on her ability to work. Specifically, she claims that the ALJ failed to analyze the functional effects of her obesity in combination with her other impairments.

Obesity is not *per se* disabling. Instead, "[a]s with any other medical condition, [an ALJ] will find that obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-1p, 2002 WL 34686281 at *4 (2002). The ruling provides that "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." Even so, SSR 02-1p also provides that, in assessing obesity, an ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments." Id. "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Id. Thus, an ALJ must "evaluate each case based on the information in the case record." Id. The burden remains with plaintiff to provide evidence of her RFC and evidence proving disability. 20 C.F.R. §§ 416.912, 416.945(a)(3).

The ALJ recognized that Amstein had been diagnosed with "exogenous obesity," (AR 24), but concluded that the condition was not "severe," stating: "There is insufficient evidence that this condition affects the claimant's end organ system, or aggravates an already existing impairment, or otherwise affects her work-related activities." (AR 26). And, in assessing her RFC, the ALJ considered plaintiff's obesity, but found that "[w]hile the record does show evidence of obesity, as indicated above, the record does not establish the effect that the obesity has had on the claimant sufficiently to find that she cannot work because of it or because it aggravates another condition."

1   (AR 30). This finding is supported by the record.

2   During examination by the ALJ at the hearing, plaintiff testified that she gained over 120
3   pounds because of steroid shots to her feet. (AR 54). When the ALJ then asked for any evidence
4   showing the "exacerbation by weight" or "residual damage" to any part of plaintiff's body, her
5   counsel said there was none because her physicians were treating the matter as fibromyalgia:

6   Q: How much do you weigh now?
7   A: 260 pounds.
8   Q: How tall are you?
9   A: 5'7".
10  ALJ: Do we have any evidence that she's got any residual damage from---to any part of
11  her body?
12  ATTY: From the steroids?
13  ALJ: Well no, from weight or from exacerbation by weight.
14  ATTY: No. They're treating it as fibromyalgia.

15  (AR 54).

16  Similarly, when the ALJ asked plaintiff to identify significant evidence about her bulging
17  discs, her attorney responded that plaintiff's "primary impairment here is fibromyalgia, and not
18  orthopedic type of impairment, bulging disks is---they didn't make much of it is what I
19  understand. . . . The findings of bulging disks. They don't particularly make our case, I concede
20  that." (AR 62).

21  Focusing attention on her fibromyalgia, plaintiff directed the ALJ to the reports of
22  neurologist Dr. Dale Helman and internist Dr. Becky Kroll. (AR 63-64). The ALJ thoroughly
23  considered the records of both physicians. With respect to Dr. Helman, the ALJ correctly noted
24  that after evaluating plaintiff for about 18 months, Dr. Helman diagnosed degenerative disc
25  disease, but was unable to identify an underlying pathology for plaintiff's complaints of leg pain.
26  (AR 23, 234-239).

27  As for Dr. Kroll, the ALJ considered the Fibromyalgia Residual Functional Capacity
28  Questionnaire in which she concluded that Amstein has limitations secondary to fibromyalgia.

6

(AR 25, 443). However, the ALJ also correctly noted that Dr. Kroll was unable to answer questions asking for clinical findings or laboratory and test results that show plaintiff's medical impairment and was also unable to answer questions about the degree to which plaintiff can tolerate work stress; the weight in pounds plaintiff can lift in a competitive work situation; limitations, if any, involving plaintiff's hands, fingers, or arms; the number of days plaintiff would miss work because of her condition; and whether plaintiff has any other limitations that would affect her ability to work. (AR 25, 443-447). Moreover, the ALJ correctly noted that "Dr. Kroll has recognized the insufficiency of her own evaluation because she recommends a different evaluation be subsequently conducted that involves a 'formal functional disability evaluation for further information and recommendation.'" (AR 25, 447).[2]

In her summary judgment papers, plaintiff does not identify any functional limitations of her obesity that would have impacted the ALJ's analysis, or that he failed to consider, or that are not reflected in the assessed RFC. Moreover, while several physicians noted that plaintiff is obese, plaintiff does not identify (and this court has not found) any who addressed any functional limitations due to her obesity, either alone or in combination with her other impairments. The ALJ also thoroughly examined other medical evidence, none of which indicated the functional effects of plaintiff's obesity:

The ALJ correctly noted that Dr. Aguas, plaintiff's family practitioner, said that Amstein had chronic neck pain and lumbar spine pain and was "very obese," but that Dr. Aguas did not provide objective findings supporting he conclusions. (AR 22, 250, 279). Moreover, the ALJ noted that although some of Dr. Aguas' records showed some objective/subjective signs of tenderness on three different occasions in three different areas of the body (the back, breasts, and at the cervical spine and over the shoulder muscle), those examinations "do not show 'trigger point' tenderness or involve other specified degrees of tenderness." (AR 22-23). And, while the ALJ recognized that Dr. Aguas raised the possibility of fibromyalgia in December 2007, he

---

[2] Although the ALJ partially discredited Dr. Kroll's opinions expressed in the Fibromyalgia Residual Functional Capacity Questionnaire, he did consider Dr. Kroll's observations to the extent that they were consistent with the examinations of other physicians. (AR 29). Plaintiff does not challenge the ALJ's treatment of Dr. Kroll's opinions.

1   correctly noted that "she does not establish that as a diagnosis for the claimant." (AR 23, 426,
2   431-432, 437).

3         The ALJ also considered the records of podiatrist Dr. David Abdoo, who examined
4   Amstein on August 22, 2006 and noted that plaintiff reported gaining over 100 pounds, but
5   nevertheless found that "[h]er musculoskeletal examination of straight leg raising was negative as
6   was tinel signs. Sensation, motor and strength of the extremities were normal. There was normal
7   range of motion of the foot but tenderness at the plantar fascia and over foot nerves." (AR 23,
8   243-244). The ALJ acknowledged that Dr. Abdoo diagnosed Amstein with having heel pain from
9   plantar fasciitis and intracalcaneal neuritis bilaterally and prescribed steroid injections, splints,
10  stretching exercises, and proper shoes. (AR 23, 243-244). He also correctly noted that Dr. Abdoo
11  believed that plaintiff "was 'likely' suffering from double crush phenomenon but did not indicate
12  specifically as to what findings supported that diagnosis." (Id.). And, the ALJ also considered Dr.
13  Abdoo's January 25, 2007 examination in which Dr. Abdoo found "pain which was generalized
14  over the heel, a positive bowstring test and tenderness and palpation over the Tinel region." (Exh.
15  7F, p. 2)." (AR 23).

16        Several months later, on June 16, 2007, plaintiff was examined by orthopedic consulting
17  physician, Dr. Madireddi, who diagnosed plaintiff with "exogenous obesity" and chronic
18  cervicothoracic lumbar strain. The ALJ correctly noted that Dr. Madireddi's report nonetheless
19  shows that plaintiff's:

> musculoskeletal examination was normal and showed full range of motion with no tenderness, normal strength with no reflex, sensory, or neurological deficit. Straight leg raising was normal as was gait. Dr. Madireddi diagnosed the claimant with having chronic cervicothoracic lumbar strain and exogenous obesity. (Exh. 11F, p. 2). She advised that the claimant could lift and carry a maximum of 50 lbs occasionally and 25 lbs frequently and otherwise had no restrictions in work-related activities. (Exh. 11F, p. 2).

25  (AR 24, 285-287).

26        The ALJ further considered the evaluation of consultant J.T. Bonner, who conducted a
27  physical RFC evaluation on July 20, 2007. Although Bonner noted that plaintiff is obese and had
28  limitations "due to pain and stiffness from [degenerative disc disease] L-spine" and from "Rt heel

8

pain" (AR 289), the ALJ correctly noted that Bonner determined that plaintiff:

> could perform a light exertional work load with limitations of occasionally climbing ramps and stairs, but never ladders/ropes/and scaffolds; she was able to frequently balance, kneel, crouch, and crawl and occasionally stoop. All other functions were unlimited with the exception of advising that the claimant should avoid concentrated exposure to hazards. (Exh. 12F).

(AR 24, 288-292).

The ALJ acknowledged that Dr. Matthew Wedemeyer MD at the Stanford Pain Management Center diagnosed plaintiff with fibromyalgia in 2008, finding that she had 16 of 18 positive tender points per the American College of Rheumatology criteria. (AR 24, 369). Dr. Wedemeyer's report also acknowledged that plaintiff had a past medical history of obesity and depression and anxiety. (Id.). But the ALJ correctly noted that although Dr. Wedemeyer "reviewed the MRIs previously completed of the claimant's spine, he did not diagnose the claimant with having degenerative joint or disc disease. His examination findings were otherwise unremarkable and showed no sensory, motor, strength, reflex, or neurological deficits. He prescribed aerobic type exercise and medications such as Neurontin and lyrica for the pain, trigger point injections, and physical therapy." (AR 24, 367-372).

Finally, the ALJ also considered the psychiatric evaluation of Dr. Christopher Sanders, who noted that plaintiff's "[b]uild was overweight" and that plaintiff complained of joint pain, but who nevertheless found that plaintiff:

> had a good ability to understand and remember very short and simple instructions; her ability to under and remember detailed instructions was fair based on her mental status examination performance; her ability to accept instructions from a supervisor and respond appropriately was fair; her ability to sustain an ordinary routine without special supervision was good; her ability to complete a normal workday/workweek without interruptions at a constant pace was fair; her ability to interact with coworkers was fair; and, her ability to deal with stress encountered in competitive work was fair to good.

(AR 25, 363-366).

Based upon review of the record as a whole, the court finds that the ALJ properly considered plaintiff's obesity and that his conclusions are rational and supported by substantial

evidence. As to this issue, plaintiff's summary judgment motion is denied and defendant's summary judgment motion is granted.

### B. The ALJ's Credibility Determination

As discussed, the ALJ concluded that plaintiff has the RFC to perform light work (with some additional modifications). In so concluding, the ALJ partially discounted the claimed severity of Amstein's impairments. The parties dispute whether he provided specific clear and convincing reasons, supported by substantial evidence, for doing so.

An ALJ conducts a two-step analysis in assessing subjective testimony. First, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996)). If the claimant does so, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "'only by offering specific, clear and convincing reasons for doing so.'" Id. (quoting Smolen, 80 F.3d at 1283-84). That is, the ALJ must "make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" Id. (quoting Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002)). In weighing a claimant's credibility, an ALJ may consider several factors, including (1) ordinary techniques of credibility evaluation; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. Additionally, an ALJ may also consider the observations of treating and examining physicians and other third parties concerning the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; and functional restrictions caused by the symptoms. Smolen, 80 F.3d at 1284. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). "If the ALJ's finding is supported by substantial evidence, the court 'may not engage in second-guessing.'" Tommasetti, 533 F.3d at 1039 (quoting Thomas, 278 F.3d at 959).

The ALJ took into account plaintiff's allegations, including those asserted in her

10

1   application, her function report, and at the hearing:

> In terms of the claimant's allegations, when she filed her application she alleged that she cannot work because she has constant burning pain of the spine; because of constant "hurt", mood swings, and plantar fasciitis affecting her right side; headaches; because she cannot focus and has difficulty dealing with people; and, because she can't lift and carry or use her hands too much. (Exh. 3E, p. 2). In her function report, the claimant's focus was that her neck and foot pain prevented her activity and that her depression affected her daily activities. (Exh. 6E). In addition, at the hearing the claimant added that her weight gain causes nausea sleepiness and that she cannot stand for more than 10 minutes because of lower back and foot pain; cannot walk more than 3 blocks before resting; can sit for 5-10 minutes because of neck pain and spends 10 hours lying flat because of pain which wakes her at night. (Claimant's Testimony).

(AR 29-30). The ALJ further found that Amstein's medically determinable impairments reasonably could be expected to cause the alleged symptoms. Nevertheless, he discounted the intensity, persistence, and functionally limiting effects of plaintiff's allegations to the extent they are inconsistent with an RFC for the scope of light work he concluded she could perform.

In reaching that conclusion, the ALJ found that the claimed severity of plaintiff's allegations are not supported by objective medical evidence. Although allegations of subjective pain and other symptoms cannot be rejected solely on that ground, medical evidence is a relevant factor that may be considered in determining the severity of plaintiff's pain and its disabling effects. Here, the ALJ correctly noted that the medical evidence "shows one instance where trigger points are documented and only several instances over a 1 year period where tenderness is documented in relation to her physical symptoms"; "claimant's record reveals consistently normal musculoskeletal examinations with one instance of a positive straight leg raising exam in 2007 that has not been repeated. (Exh. 26F, p. 19)"; Dr. Abdoo did "not affirmatively diagnose a condition other than plantar fasciitis, and there is no indication that plaintiff requires assistance with ambulation because of the pain that may be associated with this condition or that the claimant cannot work because of this condition"; and the record contains "no evidence of neurological deficits of any kind which can explain the intensity and limiting features of the type of pain the claimant alleges which [sic] she experiences." (AR 30). Moreover, as discussed above, he found that the record does not establish the effect Amstein's obesity has had on her, such that he

1    sufficiently could find that she cannot work because of her obesity or because it aggravates
2    another condition. (Id.).
3      Plaintiff argues that there are "abundant" objective findings to support her allegations, but
4    merely directs the court to her statements about her claimed limitations (AR 42-43, 46, 54-60,
5    162-170, 181-188); her testimony that she was told to lose 60 pounds so that she can have breast
6    reduction surgery to relieve her back pain (AR 60); MRI reports showing some minimal bulging
7    discs, but otherwise normal MRIs of the lumbar and cervical spine (AR 168-269); and Dr.
8    Wedemeyer's fibromyalgia diagnosis (AR 367-372). These arguments are beside the point as
9    there is no dispute about the existence of medically determinable impairments that could cause
10   some of her alleged symptoms.
11     But, plaintiff is correct that credibility determinations must be based on more than just a
12   lack of objective medical evidence. This is especially true of fibromyalgia because courts have
13   recognized that "physical examinations will usually yield normal results---a full range of motion,
14   no joint swelling, as well as normal muscle strength and neurological reactions." Preston v. Sec'y
15   of Health & Human Servs., 854 F.2d 815, 817-18 (6th Cir. 1988). As explained by the Ninth
16   Circuit, fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective
17   tissue components of muscles, tendons, ligaments, and other tissue." Benecke v. Barnhart, 379
18   F.3d 587, 589 (9th Cir. 2004). Common symptoms "include chronic pain throughout the body,
19   multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the
20   cycle of pain and fatigue associated with this disease." Id. "Fibromyalgia's cause is unknown,
21   there is no cure, and it is poorly-understood within much of the medical community. The disease
22   is diagnosed entirely on the basis of patients' reports of pain and other symptoms." Id.
23   Nevertheless, "[t]he American College of Rheumatology issued a set of agreed-upon diagnostic
24   criteria in 1990," and the Ninth Circuit has recognized the tender point test as one way of
25   diagnosing the disease, see Rollins, 261 F.3d at 855 (observing that fibromyalgia is characterized
26   by multiple tender spots on the body, and that a patient must have at least 11 of them to be
27   diagnosed with the disease). Even so, as noted by one court, "[s]ome people may have such a
28   severe case of fibromyalgia as to be totally disabled from working, but most do not and the

question is whether [plaintiff] is one of the minority." Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996) (citations omitted).

Contrary to plaintiff's arguments, the ALJ based his credibility determination on more than just a lack of objective medical evidence. With respect to plaintiff's allegations about her medications, nausea, insomnia, and depression, he discredited the claimed severity of their effects because they were not supported by objective medical evidence, by the longitudinal record, or by plaintiff's own reports to her physicians, and because plaintiff changed the focus of her allegations from time to time:

> As to the claimant's medications and their effects, her nausea, and her insomnia, the record does not sufficiently show that this is a debilitating factor in her ability to work. There are occasional and infrequent complaints of these types of factors noted in the record which are not addressed as factors, either singly or in combination with others, by the claimant's physicians as keeping the claimant from her work. Finally, the undersigned is considerate of the fact that the claimant cannot afford a psychiatrist, however, she has been able to procure Prozac for her depression in the past. Yet, the claimant's longitudinal medical record does not establish the limiting effects of her depression nor did the claimant indicate that this is [a] significant factor when she reported her complaints to Dr. Sanders. In addition, as the claimant changes the focus of her allegations as discussed above in some respects from time to time, the constancy and limiting nature of any one of those allegations in being able to affect her ability to function is drawn into question.

(AR 30). Based upon review of the record as a whole, the court finds that the ALJ provided sufficiently specific reasons, supported by substantial evidence, for discrediting plaintiff's subjective complaints about the effects of her medications, nausea, insomnia, and depression.

As for plaintiff's pain allegations, in addition to lack of objective medical evidence, the ALJ based his credibility determination on what he found to be inconsistencies between what plaintiff claims she can do and what her treating physicians indicated she is capable of doing. The ALJ correctly notes that in the Fibromyalgia Residual Functional Capacity Questionnaire, Dr. Kroll did not identify any limitations with respect to plaintiff's hands, arms, or shoulders for reaching, handling, or fingering, and also advised that severe pain would only "occasionally" (i.e., 6%-33% of an 8-hour workday) interfere with plaintiff's concentration. (AR 29, 30, 444). Additionally, the ALJ noted that "rather than inactivity," Dr. Wedemeyer "prescribed aerobic

activity indicating that he assessed the claimant's capability to be better than the claimant alleges them to be even with her condition of fibromyalgia and pain." (AR 30). Plaintiff argues that Dr. Wedemeyer's recommended exercise regimen was very limited and does not contradict her allegations as to the severity or functionally limiting effects of her fibromyalgia. True, according to Dr. Wedemeyer's report, the recommended exercise program was to start slow; but, his overall prognosis was that exercise would improve plaintiff's activity over time:

> I have told her [that] aerobic exercise has been shown to be the most effective fibromyalgia [therapy] and that she should start slow and progress with this over the next few months. I have recommended that she start walking maybe 5 minutes per day and increasing this by 5 minutes every week. There may be days where she does not feel like it and she can take a few days off but the general trend should show that she is improving her activity on a weekly basis.

(AR 371). The ALJ also noted that while some of Dr. Wedemeyer's recommendations were followed, neither plaintiff nor the record showed that she followed an aerobic exercise program. (AR 24).

Plaintiff argues that this evidence merely shows that physicians want to be optimistic about their patients' abilities. Nevertheless, the ALJ is responsible for determining credibility and for resolving ambiguities and conflicts; and, the ALJ properly could consider such evidence in assessing the credibility of plaintiff's pain allegations. While his conclusion may not be the only one that might be drawn, based upon review of the record as a whole, the court finds that the ALJ provided sufficiently specific reasons, supported by substantial evidence, for partially discrediting plaintiff's subjective complaints as to the intensity, persistence, and functionally limiting effects of her pain. On this issue, plaintiff's summary judgment motion is denied and defendant's summary judgment motion is granted.

14

**ORDER**

Based on the foregoing, plaintiff's summary judgment motion is denied and defendant's summary judgment motion is granted. The clerk shall enter judgment and close the file.

SO ORDERED.

Dated: March 30, 2015

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

5:10-cv-05664-HRL Notice has been electronically mailed to:

Brenda Maureen Pullin    Brenda.Pullin@ssa.gov, geralyn.gulseth@ssa.gov, ODAR.OAO.COURT.1@ssa.gov, sf.ogc.ndca@ssa.gov

Marc V. Kalagian    marc.kalagian@rksslaw.com, marckalagian_rohlfinglaw@hotmail.com, mayra.pulido@rksslaw.com